DAVID COURTNEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58164.    Filed June 14, 1957.

*Lee S. Jones, Esq.*, for the petitioner.
*Charles R. Hembree, Esq.*, for the respondent.

**664**

OPINION.

Black, *Judge:*

### Issue 1. Net Worth Method.

The petitioner first contends that his books and records were adequate, that his tax returns were correct, and that the respondent erred in determining his income by the net worth method.

The petitioner operated a country grocery store for a part of the period involved and a farm for the other part. Neither he nor his wife, who helped him, was well acquainted with accounting or bookkeeping methods. They did, however, keep books and records for the store and the farm, in which they entered their receipts and disbursements. They kept a bank account, recorded credit sales, and compiled inventories. At the end of each year they gave certain information that was recorded on their books and records to their attorney, who would prepare their returns. The petitioner, his wife, and the attorney all testified that they considered the returns to be correct.

Although we believe the petitioner tried to keep records which clearly reflected his income, we cannot, on the record, find that they did so and that the returns in question were correct. The record is not clear as to the method used in preparing the returns. The petitioner left it up to the attorney. On direct examination the attorney testified that the returns were prepared on "the cash receipts and disbursements method." The returns show that inventories were used in determining income. On cross-examination the attorney testified that he gave consideration to credit sales in computing the income on the returns. This seemingly conflicting testimony renders it difficult to find which method the petitioner used in determining his income and whether the method which he did use clearly reflected that income.[2]

---

[2] The discrepancies in this case may partially be the result of fluctuations in accounts receivable. As we stated previously, the record is not clear as to whether accounts receivable were used in determining income. Since the petitioner was in a business in which the use of inventories was necessary for a determination of income, accounts receivable also must be used in order to clearly reflect income. Regs. 118, sec. 39.41–2.

No statement made up from the books showing petitioner's net income for any of the taxable years was introduced in evidence.

We have here a situation where the Commissioner has determined that petitioner's books and records were inadequate for the purpose of determining petitioner's net income in the taxable years. Petitioner, on the other hand, contends that respondent had no right to make such a determination because, as a matter of fact, his books and records were adequate. However, if that is true, it was petitioner's burden of proof to show by summaries made from the books and records what his net income was during each of the taxable years. No such showing was made. It is not a sufficient showing to rebut the presumptive correctness of respondent's determination that petitioner should testify that his returns were correct or that his attorney who prepared the returns should give testimony to the same effect. The books and records themselves must be brought before our Court and a satisfactory showing made from them as to what petitioner's net income really was. Petitioner not having made any such showing as to what his net income was for the taxable years, we have no alternative but to turn to the net worth method, which the Commissioner has used in his determination of the deficiencies, for an answer to the problem.

Therefore, it naturally follows that under the circumstances of the instant case, we cannot say that in disregarding the petitioner's books and records the respondent exceeded the authority granted him in section 41.[3] Also, the net income determined by the net worth method is substantially in excess of the net income shown on the returns. This is cogent evidence of the unreliability of the books and records. Cf. *Morris Lipsitz,* 21 T. C. 917, 931 (1954).

The petitioner argues that the respondent's net worth statement is grossly in error and unreliable and, therefore, it should not be used. We disagree. After the oral stipulations and concessions only three items, one of which was substantial in amount, remain in controversy. The three items remaining in controversy are:

(a) *New Furniture and Improvements.* The net worth statement showed as an asset "New Furniture & Improvements" in the amounts of $550 on December 31, 1952, and $2,657 on December 31, 1953. The petitioner agrees that the $550 balance on December 31, 1952, is correct. The petitioner proved that he purchased "New Furniture & Improvements" in the amount of $1,996.56 in the year 1953. He, therefore, contends that the December 31, 1953, balance of $2,657 is overstated by $660.44 ($2,657 minus $1,996.56). The petitioner has not shown, nor

---

[3] SEC. 41. GENERAL RULE.

The net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

does his 1953 return or the record indicate, that all or part of the "New Furniture & Improvements" on hand at December 31, 1952, was disposed of prior to December 31, 1953. Accordingly, we have found that "New Furniture & Improvements" should be shown on the net worth statement as of December 31, 1953, in the amount of $2,546.56 ($550 plus $1,996.56), rather than $2,657, as determined by the respondent.

(b) *Depreciation Reserve.* The net worth statement shows a depreciation reserve on December 31, 1951, in the amount of $1,520.75, which amount does not include any accumulated depreciation for two cows sold during the year 1951. The petitioner agrees to various amounts of accumulated depreciation comprising that amount. He contends, however, that during 1951 he sold two cows which had a basis of $500, for $345; that he deducted the $155 difference between the basis and the selling price as depreciation; and that, therefore, the depreciation reserve should also include the $155. Regardless of whether the difference between the basis and the sales price was properly characterized as depreciation, see *Estate of B. F. Whitaker*, 27 T. C. 399, 405-406 (1956), there is no merit to petitioner's contention. The cows were not on hand on December 31, 1951, and were not included in the net worth statement as assests on that date. Therefore, any accumulated depreciation attributable to those assets would not properly be included in the reserve for depreciation account. The balance in the reserve for depreciation account represents the accumulated depreciation taken on property which *is included* among the assets.

(c) *Living Expenses.* The respondent determined the petitioner's nondeductible living expenses to be $2,000 for each of the years 1949, 1950, and 1951, and $2,500 for the year 1953. The respondent, in determining living expenses for 1953 as $2,500, included therein a nondeductible expenditure of $1,000 which petitioner incurred and paid as funeral expenses upon the death of his daughter. However, this funeral expense of $1,000 was offset by $850 which petitioner collected on an insurance policy as reimbursement for funeral expenses. Our Findings of Fact show how this item was treated by respondent in his net worth computation.

The petitioner contends that his nondeductible living expenses were about $1,300 a year. After examining the record and giving consideration to the petitioner's mode and manner of living, to the number of dependents, to the fact that he owned a house and/or a farm and did not pay rent, and to the specific expenditures to which he testified, we have concluded that petitioner's living expenses for himself and family were not as great as the respondent has determined in his net worth computation. We have made findings of fact, however, that

these living expenses were greater than the $1,300 which petitioner claimed in his testimony for each of the taxable years.

In 1949, both of petitioner's daughters were at home and in school. After taking all the facts into consideration we have made a finding that petitioner's living expenses for 1949 were $1,750.

In 1950, petitioner's oldest daughter graduated from school and after graduation moved to Louisville, Kentucky, where she was employed for the remainder of the year, earning her own living. We have, therefore, made a finding that petitioner's living expenses for 1950 were $1,650.

In 1951 and 1953, only one of petitioner's daughters was living at home. The other daughter was employed in both of those years in Louisville and was earning her own support. We have, therefore, made a finding that petitioner's living expenses for 1951 and 1953 were $1,500 for each year. However, in the year 1953, petitioner incurred and paid a nondeductible expense of $1,000 on account of the death of his daughter. He was reimbursed for $850 of this by an insurance company. After giving effect to this reimbursement it will be seen that petitioner had a nondeductible expense of $150 on account of the death of his daughter. This, added to the $1,500 nondeductible living expense, makes $1,650.

The living expense figures given above should be used in a computation under Rule 50.

### Issue 2. Statute of Limitations.

Petitioner's returns for the years 1949 and 1950 were filed on January 16, 1950, and January 12, 1951, respectively. However, these returns were not due until March 15, 1950, and March 15, 1951, respectively, section 53 (a) ; and, for the purpose of applying section 275 (c), the returns are considered as filed on the last day they were due. Sec. 275 (f). Accordingly, the 5-year statute of limitations, if it is applicable to the instant case, extended to March 15, 1955, for the year 1949, and to March 15, 1956, for the year 1950. The notice of deficiency setting forth the deficiencies for the years 1949 and 1950 was mailed to petitioner on March 10, 1955. Consequently, it will be seen that the respondent's notice of deficiency was mailed more than 3 years and less than 5 years after the returns for 1949 and 1950 were due. The petitioner, relying on section 275 (a)[4] contends that the Commissioner's action with respect to those years is barred by the statute of limitations.

---

[4] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

The respondent contends that the 5-year period of limitations provided for in section 275 (c)[5] is applicable. Under section 275 (c) the respondent has the burden of proving that the petitioner omitted from gross income an amount in excess of 25 per cent of the amount of gross income stated in the return. *C. A. Reis,* 1 T. C. 9 (1942).

The record shows that for the years 1949 and 1950, the amounts of unreported net income are in excess of 25 per cent of the gross income stated in the returns. In order to equate the unreported net income to omitted gross income, it is incumbent upon the respondent to show that the unreported net income results from omitted gross income rather than from excessive deductions. *H. A. Hurley,* 22 T. C. 1256, 1264–1265 (1954), affirmed on another point (C. A. 6, 1956) 233 F. 2d 177. The amount of deductions which petitioner took on his returns for the respective years 1949 and 1950 is shown in our Findings of Fact. He does not claim that he should have reported any additional deductions to those claimed on his returns.

In the *Hurley* case, *supra,* the Commissioner used the net worth method in computing the taxpayer's net income. The taxpayer pleaded the 3-year statute of limitations as a bar to the assessment of the deficiency for the year 1947. The Commissioner, in turn, pleaded that the 5-year statute of limitations provided by section 275 (c) was applicable because the taxpayer had omitted in excess of 25 per cent of his gross income reported on his return. In holding that the Commissioner had not met his burden of proof to show that such was the case, we said:

A computation by the net worth method could result in increased net income by reason of deductions having no factual basis. The probability that some part of the increased net income here is attributable to that factor is apparent not only from the nature of petitioner's business but the large amounts he claimed for deductions in computing net income. [Our Findings of Fact show that for the year 1947, the taxpayer claimed "Other Business Deductions" totaling $65,432.57. He had reported gross income of $80,513.50 on his return.] The theory advanced by respondent ignores that probability completely and requires an inference, lacking a reasonable basis, that all of the additional net income resulted from omissions of gross income.

Applying the rationale of the *Hurley* case, *supra,* to the facts of the instant case, we think the 5-year statute of limitations provided in section 275 (c) is applicable and the assessment of the deficiency determined for 1949 is not barred. Assessment of the deficiency determined for the year 1950 is barred because the Commissioner has not borne his burden of proof to show that section 275 (c) is applicable under the facts.

---

[5] (c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

We have set forth in our Findings of Fact the unreported net income for 1949, after reducing it by the total amount of deductions taken by petitioner on his return. This leaves a figure of $4,772.09, which it seems to us is the minimum amount of gross income which petitioner omitted from his 1949 return. This exceeds 25 per cent of the gross income stated in the return. This unreported net income, it seems to us, could only be from an omission of gross income. The same is not true for 1950, since the minimum amount of gross income omitted, using the same formula as for 1949, does not exceed 25 per cent of the amount of gross income shown on the return. See Findings of Fact, *supra*.

Accordingly, we hold that the proceeding for the year 1949 is not barred by the statute of limitations as provided in section 275 (c), and that the proceeding for the year 1950 is barred as provided in section 275 (a).

What we have held here, we think, is not in conflict with our decision in *H. Leslie Leas*, 23 T. C. 1058 (1955), a case relied upon by respondent in his brief. The *Leas* case was not a case where the Commissioner had used the net worth method in determining the deficiencies. In that case the taxpayer pleaded the statute of limitations as to the years 1947 and 1948, and the Commissioner relied upon the 5-year statute of limitations provided by section 275 (c). On the statute of limitations issue we made specific findings that "petitioner omitted from his reported adjusted gross income for each year $19,550.97 and $9,667.19, respectively," and we held that these amounts were in excess of 25 per centum of the gross income reported in the returns. In so holding, we distinguished the *Hurley* case, *supra*, as follows (p. 1064):

It should be noted that *H. A. Hurley*, 22 T. C. 1256 (1954), is not applicable to the instant case. In that case respondent established that there was an understatement of net income by the net worth method. Under that method, an understatement of net income could have resulted from overstatement of deductions, as well as from an omission of gross income in the return. Under the circumstances of that case, we held, in effect, that proof of understated net income did not establish *per se* an omission from gross income within the meaning of section 275 (c). In the instant case, however, the record clearly establishes an understatement of gross income attributable to unreported receipts in excess of 25 per centum of the gross income reported in each return. Thus, the principle of the *Hurley* case is not here applicable.

### Issue 3. Additions to the Tax.

(a) The respondent has determined an addition to the tax as provided in section 293 (a) for the year 1953. The burden of proving that the imposition of this addition is erroneous rests upon petitioner. *J. T. S. Brown's Son Co.*, 10 T. C. 840, 851 (1948) ; *Gibbs & Hudson*,

*Inc.,* 35 B. T. A. 205, 211 (1936). Section 293 (a) provides for the assessing of an addition to tax totaling 5 per cent of a deficiency if any part of the deficiency "is due to negligence, or intentional disregard of rules and regulations but without intent to defraud." In our Findings of Fact under this issue, we made the following finding: "The deficiency for the year 1953 was due at least in part to negligence or intentional disregard of rules and regulations." The above finding disposes of the issue as to the addition to tax under section 293 (a) against petitioner. Cf. *Hyman B. Stone,* 22 T. C. 893, 906 (1954). The amount of this addition to tax will be recomputed under Rule 50.

(b) The respondent also determined additions to the tax as provided in section 294 (d) (1) (A) for the year 1953. The burden of proving that the failure to make and file a declaration of estimated tax was due to reasonable cause and not to willful neglect is on the petitioner. *Harry Hartley,* 23 T. C. 353, 360 (1954). No evidence regarding this matter has been introduced; therefore, the respondent's determination is upheld. The amount of the addition under section 294 (d) (1) (A), along with the amount of the addition under section 294 (d) (2), can be recomputed under Rule 50.

(c) Respondent concedes that the additions to the tax which he imposed under section 293 (b) were erroneous. Also, based on the evidence, we have made a finding that no part of the deficiencies for 1949, 1950, and 1951 is due to fraud with intent to evade the tax. Respondent is reversed as to the additions to tax under section 293 (b).

*Decision will be entered under Rule 50.*