S. O. Bynum [1] v. Commissioner. Bynum v. Commissioner
Docket Nos. 41894-41898.
United States Tax Court
T.C. Memo 1958-19; 1958 Tax Ct. Memo LEXIS 220; 17 T.C.M. (CCH) 87; T.C.M. (RIA) 58019; January 31, 1958
*220 All of the books and records of petitioner, the operator of a nursery, were destroyed. Respondent, therefore, determined petitioner's income for the years 1944 to 1948, inclusive, by the net worth method. Petitioner contests the correctness of certain items on the net worth schedule and contends that the statute of limitations bars the proceeding for the years 1944 to 1947, inclusive. Held, that, except for adjustments for inventories, improvements to residence, and certain concessions, the respondent's determinations of income are approved. Held, further, that the notice of deficiency which was mailed after 3 years and before 5 years from the time the 1944-1947 returns were filed was timely under section 275(c), I.R.C. 1939, for the years 1944 to 1946, inclusive, but that the proceeding for the year 1947 is barred under section 275(a), I.R.C. 1939, since petitioner did not omit an amount of gross income in excess of 25 per cent of the gross income stated in the return for that year. David Courtney, 28 T.C. 658, 667-669 (1957) followed. *221 S. Palmer Keith, Jr., Esq., for the petitioner. Frederick T. Carney, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax and additions to the tax under sections 291(a) and 293(a), Internal Revenue Code of 1939, [2] as follows: Additions to Tax
Year
Deficiency
Sec. 291(a)
Sec. 293(a)
1944
$2,365.64
$591.41
$118.28
1945
1,333.33
333.33
66.67
1946
1,682.52
84.13
1947
1,548.81
77.44
1948
1,238.18
61.91
The *222 deficiencies in income tax are based on unreported income determined by the net worth method. Petitioner concedes the propriety of the respondent's use of the net worth method but contests the correctness of certain items determined by respondent on the net worth schedule. Petitioner alleges the statute of limitations under section 275(a) and/or (c) bars these proceedings for the years 1944 to 1947, inclusive, and that there is no deficiency for the year 1948. Findings of Fact Petitioner, a resident of Tuscaloosa County, Alabama, filed his separate individual income tax returns for the years 1944 to 1948 with the collector of internal revenue for the district of Alabama, in Birmingham. From 1936 through the years in question the petitioner owned and operated a nursery business called the Southern Tree and Landscape Company, Tuscaloosa, Alabama. Petitioner made both wholesale and retail sales. Nearly all of his retail business was handled by cash sales. Petitioner's books and records were destroyed prior to the examination of the tax returns involved in this case. Respondent employed the net worth method of reconstructing petitioner's income for the years 1944 through 1948. *223 Findings with regard to the items in issue are as follows: (a) Equipment and reserve for depreciation. - Respondent's net worth schedule shows the petitioner's equipment and reserve for depreciation as follows (.00 omitted): 1/1/44
12/31/44
12/31/45
12/31/46
12/31/47
12/31/48
Equipment
$15,804
$16,134
$17,014
$19,070
$22,513
$25,784
Reserve for depreciation
3,073
4,108
5,031
5,831
7,015
8,802 The above amounts were taken from a detailed schedule attached to the deficiency notice which contained a description of all of the items of equipment, the date of acquisition, cost, adjusted basis at January 1, 1944, years of useful life, annual depreciation, and additions each year. No evidence has been introduced showing any error in this schedule. (b) Inventory. - In his income tax returns (Schedule C) for the years under consideration the petitioner reported his inventory on the date indicated as follows: January 1, 1944
$22,500
December 31, 1944
21,000
December 31, 1945
20,000
December 31, 1946
20,000
December 31, 1947
21,750
December 31, 1948
24,250
The respondent determined, in the notice of deficiency, *224 that the petitioner's inventory on the date indicated was as follows: January 1, 1944
$12,125
December 31, 1944
14,550
December 31, 1945
16,975
December 31, 1946
19,400
December 31, 1947
21,825
December 31, 1948
24,250
Petitioner did not compile an actual physical inventory of his nursery stock by species, size, and count at any time and did not keep inventory records. The inventory figures used in his delinquent returns for 1944 and 1945 were compiled by petitioner in March 1947, when he prepared his returns for 1944, 1945, and 1946. Petitioner based his inventory estimates, in part, upon reports made by the Alabama State Department of Agriculture. These reports were made up for the purpose of determining diseased nursery stock. Petitioner's inventory did not substantially increase between the years January 1, 1944 and December 31, 1948. The inventory values shown on petitioner's returns for the years 1944 to 1948, inclusive, more clearly reflect the actual inventory values than the inventory values shown on the respondent's net worth schedule. These inventories of petitioner were substantially correct. (c) Deposits to wife's bank account. - From time *225 to time, including during the years 1944 through 1948, petitioner borrowed money from his wife for use in his nursery business. Petitioner frequently made repayments of the borrowed money from his cash sales receipts. During the years 1944 to 1948, deposits, as shown by the net worth statement, in the total amount of $6,921.42, were made to the bank account of petitioner's wife in the First National Bank of Tuscaloosa, Alabama, in amounts as follows: Year
Amount
1944
$2,718.98
1945
764.33
1946
1,587.50
1947
943.19
1948
907.42
Total
$6,921.42
These deposits represent (a) money paid by petitioner to his wife and deposited by her to her bank account, or (b) money deposited by petitioner to his wife's bank account. (d) Living expenses. - The petitioner lived in a house owned by his wife and grew some commodities for their own use. Petitioner, each year, expended approximately the following amounts for living expenses: Total
Item
Amount
Per Year
Groceries
$ 12.50 per week
$ 650.00
Electricity
8.00 per month
96.00
Laundry, etc.
10.00 per month
120.00
Church
5.00 per month
60.00
Clothing
500.00 per year
500.00
Heat, fuel
10.00 per month
50.00
Taxes on home
120.00
Fire insurance
$3000 at.80 per $100
24.00
Total
$1,620.00
*226 In addition, petitioner operated an automobile, made occasional expenditures for doctor bills and medicine, and made other everyday out-of-pocket expenditures. Petitioner's living expenses during each of the years involved were $2,400. (e) Improvements to residence. - in 1944, improvements costing $415 were made to petitioner's residence. Petitioner's wife was the owner of the house at that time. Petitioner's wife paid for the material (which cost $415) and petitioner did the work. Corrected Net Worth Schedule The respondent's net worth schedule (partly condensed) corrected to give effect to our findings, supra, is as follows: 1/1/44
12/31/44
12/31/45
12/31/46
12/31/47
12/31/48
Assets:
Cash
$ 79.45
$ 1,132.71
$ 522.33
$ 724.22
$ 288.19
$ 604.87
Equipment
15,804.50
16,134.50
17,014.50
19,070.50
22,513.00
25,784.96
Inventory
22,500.00
21,000.00
20,000.00
20,000.00
21,750.00
24,250.00
Total Assets
$ 38,383.95
$ 38,267.21
$ 37,536.83
$ 39,794.72
$ 44,551.19
$ 50,639.83
Reserve for Depreciation
$ 3,073.30
$ 4,108.40
$ 5,031.75
$ 5,831.90
$ 7,015.99
$ 8,802.69
Liabilities
18,000.00
17,000.00
16,000.00
16,000.00
16,000.00
16,000.00
Total liabilities
$ 21,073.30
$ 21,108.40
$ 21,031.75
$ 21,831.90
$ 23,015.99
$ 24,802.69
Net worth
$ 17,310.65
$ 17,158.81
$ 16,505.08
$ 17,962.82
$ 21,535.20
$ 25,837.14
Increase or decrease in net worth
$ (151.84)
$ (653.73)
$ 1,457.74
$ 3,572.38
$ 4,301.94
Add: non-ded. expen. wife's deopsit
2,718.98
764.33
1,587.50
943.19
907.42
Living expenses
2,400.00
2,400.00
2,400.00
2,400.00
2,400.00
Income tax paid
111.00
Corrected Adj. gross income [1]
$ 4,967.14
$ 2,510.60
$ 5, 445.24
$ 6,915.57
$ 7,720.36
(f) Additions to the tax under sections 291(a) and 293(a). - No evidence has been introduced regarding these items. (g) Statute of Limitations. - Petitioner's returns were filed as follows: Year
Date Filed
1944
March 15, 1947
1945
March 15, 1947
1946
March 15, 1947
1947
March 15, 1948
The notice of deficiency in all five dockets here involved was mailed *227 March 12, 1952. Schedule C of the petitioner's returns shows the following.. [SEE TABLE IN ORIGINAL] No other income was reported by petitioner for any of the above years. For 1947, the petitioner elected to take the standard deduction. The petitioner reported no gross income for the years 1944 to 1946, and reported gross income in the amount of $6,009.85 for the year 1947. (See line denominated "Gross profit or (loss)" in table in prior paragraph.) Twenty-five per cent of $6,009.85 is $1,502.46. The following is a computation of the minimum amount of gross income omitted for each of the years 1944 to 1947, inclusive: [SEE TABLE IN ORIGINAL] Petitioner omitted from gross income for each of the years 1944 to 1946, inclusive, an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return. The minimum amount of unreported gross income for 1947 did not exceed 25 per cent of the gross income stated in the return for that year. Opinion BLACK, Judge: The respondent has reconstructed the petitioner's income for the years 1944 to 1948 by use of the net worth method. Petitioner does not contest the use of this *228 method but does contest the correctness of certain items used in the computation. The contested items will be discussed in the same order as the Findings of Fact relating to them. (a) Equipment and reserve for depreciation. - Petitioner, in his amended petition, states, in part, as follows: "4. The determination of tax set forth in notice of deficiency is based upon the following error, to-wit: * * *
"e. In said statement equipment and reserve for depreciation are also erroneously and arbitrarily computed without an allowance for equipment owned January 1944, and without an allowance for trade-in on trades made during said period. * * *
"5. The facts upon which the Petitioner relies as a basis for this petition are as follows: * * *
"b. He [petitioner] further claims that the increase shown by the Collector of Internal Revenue on equipment are erroneous because allowances were not considered and computed on trade-ins." At the hearing petitioner testified that on some of the acquisitions of equipment subsequent to December 31, 1943, which were included on respondent's detailed equipment and depreciation schedule, he had traded in other equipment on hand *229 and that his wife had paid for some of the newly acquired items. This testimony was vague and uncertain and we are unable to make any findings regarding the basis of the various items contrary to what is included in the respondent's schedule. Petitioner, on brief, apparently sensing the inadequacy of the record, asks for no findings and makes no contention regarding the basis of the various assets acquired during the net worth period. However, on brief, he contends that the depreciation allowed by the respondent was in error. He contends that a number of items should be depreciated over a shorter period of time. On the record, we must uphold the respondent's determination in this matter. There is nothing in the record bearing on the reasonableness of the depreciation allowed. And comparing the depreciation rates used by the respondent with the rates recommended in Bulletin F [3] for agricultural equipment, we see that respondent's determinations provide for a more adequate allowance than the rates in Bulletin F would give. Also, if petitioner's contentions were upheld many of the items would have been fully depreciated prior to January 1, 1944. Therefore, petitioner's net worth *230 increases would be greater than the respondent determined, rather than less. Accordingly, we uphold the respondent regarding the equipment and reserve for depreciation. (b) Inventory. - Petitioner did not take any physical inventories nor did he keep any inventory records. On his returns he estimated [4] his inventory values at the end of each year and used these amounts (as part of cost of goods sold) in computing his income. The estimates used ranged from a low of $20,000 to a high of $24,250, with a net increase of $1,750 between the opening and closing dates on the net worth schedule. Respondent determined the inventory to be $12,125 at January 1, 1944, the beginning of the net worth period, and increased it progressively by $2,425 at the end of each year. At the end of the net worth period, December 31, 1948, the amount determined by the respondent is equal to the amount shown on petitioner's return - $24,250. *231 Respondent contends that the petitioner has not shown his determination to be in error. The petitioner contends that the respondent's determination is arbitrary and erroneous and that the inventory shown on the returns is substantially correct. Petitioner testified that he based his estimates on reports made by the Alabama Department of Agriculture for the purpose of determining diseased nursery stock, and that his estimates were as accurate as he could determine under the circumstances. On the other hand, the respondent did not introduce any testimony or other evidence to support his determination as to the opening inventory or to support his determination that the inventory increased each year in the "rigid, precise fashion of an arithmetical progression." [5] There were no schedules or computations supporting the respondent's determination.
Under the circumstances, we have no way of determining with any degree of certainty what the inventory was at each of the net worth dates. We think, however, that the petitioner's testimony is entitled to sufficient weight to overcome the presumption of correctness attaching to the *232 respondent's determination, especially a determination of this nature. We think the inventory amounts shown on the petitioner's returns are more substantially correct and we have made a finding to that effect. These should be used in computing the net worth increases. (c) Deposits to wife's bank account. - Respondent added to petitioner's net worth increase each year as a nondeductible expenditure the total amount deposited to the account of petitioner's wife during each year. Petitioner admits that he gave his wife the money which was deposited to her account but insists that those amounts should not be added to his net worth increase. It must be pointed out that these deposits are not included in the net worth schedule as an asset; therefore, any argument that the amounts deposited did not belong to petitioner at the end of each year is immaterial. The crucial question is did the amounts deposited come from the petitioner's funds. As stated previously, the petitioner admitted that they did. The record indicates that petitioner gave his wife these monies in repayment of monies which he had borrowed from her. However, there is nothing in the record to indicate when the petitioner *233 borrowed the money to enable us to determine whether the petitioner received assets (cash) which would not represent the receipt of income. Also, the petitioner has conceded that the liabilities section of the respondent's net worth schedule is correct. In the state of the record, we must affirm the Commissioner's determination on this issue. (d) Living expenses. - Respondent added to petitioner's net worth increases as nondeductible expenditures the amounts which he (respondent) determined that the petitioner expended for living. He determined the amount to be $3,000 for 1944 and increased that amount progressively by $200 each year. Petitioner testified as to his manner of living and to the approximate amount that he expended. Respondent, in view of this testimony, has, on brief, conceded that his determination was excessive to the extent that it exceeded $2,400 each year. The petitioner, on brief, contends that his living expenses totaled $1,376 per year. This figure fails to account for many items which petitioner testified that he made expenditures for. After examining the record, we think that the respondent's computation of the petitioner's living expenses in the amount *234 of $2,400, which he now concedes should be used in each year instead of the amounts used in the deficiency notice, is in accord with the petitioner's own testimony and reasonably represents the amounts actually expended by the petitioner. We, therefore, uphold the respondent's contention made in his brief that the petitioner's living expenses were $2,400 per year. (e) Improvements to residence. - Respondent added to petitioner's net worth increase for the year 1944 as a nondeductible expenditure the amount of $415 which was labeled "Improvements to residence." The amount of the improvements is not questioned. Petitioner does contend that it was not his expenditure. The residence to which the improvements were made belonged to petitioner's wife. The record shows that his wife paid the $415. Not having made the expenditure and not owning the house, we fail to see how it can be deemed to be his expenditure or how it can be added to his net worth increase. We hold against respondent as to this item. (f) Additions to the tax under sections 291(a) and 293(a). - No evidence has been introduced regarding the additions to the tax and it appears that the petitioner concedes his liability *235 therefor in the event there are deficiencies. Accordingly, we uphold the respondent on these items subject, however, to recomputation under Rule 50. (g) Statute of Limitations. - Petitioner's returns for the years 1944, 1945, and 1946 were filed on March 15, 1947, and his return for the year 1947 was filed on March 15, 1948. The Commissioner's notice of deficiency was dated March 12, 1952, which is after 3 years and before 5 years from the date of filing of the returns for the aforementioned years. These proceedings are, therefore, barred under section 275(a). They are, however, timely under section 275(c) if the petitioner has omitted "from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." Where, as here, the amounts omitted from the taxpayer's income have been determined by the net worth method, it is incumbent upon the respondent to show that the unreported adjusted gross income is due to an omission from gross income rather than from excessive deductions. H. A. Hurley, 22 T.C. 1256, 1264-1265 (1954), affd. on another point (C.A. 6, 1956) 233 Fed. (2d) 177. Here, *236 there is no proof of the nature of the unreported adjusted gross income as computed on the net worth schedule. However, we know the amount of "other business deductions" claimed on the returns and the amounts of gross income reported. Using this information, we have computed (see Findings of Fact, supra) the minimum amount of gross income that was omitted. David Courtney, 28 T.C. 658, 667-669 (1957). For the years 1944 to 1946, the gross income omitted exceeds 25 per cent of the gross income stated in the returns (no amount of gross income was reported for those years). Therefore, the statute of limitations does not bar those years. For the year 1947, however, no such finding can be made since the minimum amount of gross income omitted was $905.72 This amount does not exceed the amount $1,502.46 which is 25 per cent of the reported gross income. The proceeding for 1947 is, therefore, barred under section 275(a). Decisions will be entered under Rule 50. Footnotes
1. The Commissioner's deficiency notice covered the 5-year period, 1944 to 1948, inclusive. Petitioner, however, filed a separate petition for each year. All proceedings are consolidated.↩
2. All section references are to the Internal Revenue Code of 1939, as amended.↩
1. The respondent has allowed the petitioner the optional standard deduction for all years and no question is raised regarding that point.↩
3. Bureau of Internal Revenue (Revised 1942).↩
4. The inventory values for January 1, 1944, December 31, 1944, December 31, 1945, and December 31, 1946, were all estimated by petitioner early in 1947, when the returns for the years 1944, 1945, and 1946 were filed.↩
5. W. A. Shaw, 27 T.C. 561, 570↩ (1956).