Francisco M. Benitez v. Commissioner.
Benitez v. Comm'r
Docket No. 2060-64.
United States Tax Court
T.C. Memo 1967-98; 1967 Tax Ct. Memo LEXIS 164; 26 T.C.M. (CCH) 474; T.C.M. (RIA) 67098; May 5, 1967
*164 Jacob Cohen, for the petitioner. Agatha L. Vorsanger, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year ended December 31, 1960, in the amount of $11,890.33 and an addition to tax under section 6653(a), Internal Revenue Code of 1954, in the amount of $594.52. Petitioner agrees that he received interest income in the amount of $10.91 in 1960. This leaves two issues for decision: (1) Whether the petitioner received additional income of $28,117.95 in the year 1960 from unexplained deposits in his bank and brokerage accounts; and (2) whether petitioner is liable for an addition to tax under section 6653(a). Findings of Fact Some of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. In addition, the case was submitted on the deposition of Francisco M. Benitez taken in the City of Las Palmas, Canary Islands, Spain, upon written interrogatories and cross-interrogatories. At the time of filing his petition herein, Francisco M. Benitez *165 (hereinafter called petitioner) and his family resided in Las Palmas, Canary Islands, Spain. Petitioner resided in New York City during the year 1960 and filed his individual Federal income tax return for that year with the district director of internal revenue for the Manhattan District in New York, New York. Petitioner was employed as a waiter at five different restaurants in New York City during 1960 and received wages totaling $1,681.01. He also reported $520 in tips and showed adjusted gross income of $2,201.01 in his 1960 income tax return. Petitioner maintained two bank accounts in 1960 at the First National City Bank at 96th and Broadway in New York City. He deposited a total of $9,917.93 into account No. X1112 and $22,767.56 into account No. XXXX-8476 during that year. Respondent determined that all of the deposits into account No. XXXX-8476 were unexplained by petitioner and that deposits of $5,917.93 were unexplained in account No. X1112. During 1960 the petitioner maintained a brokerage account at Merrill, Lynch, Pierce, Fenner and Smith. He made the following deposits to such account: Oct. 11, 1960
$1,500
Oct. 13, 1960
(Check drawn on account No. XXXX-8476)
243
Oct. 19, 1960
(Original amount of $1,500 was returned)
1,500
Oct. 20, 1960
1,500
Nov. 9, 1960
(Check drawn on account No. XXXX-8476)
4,400
*166 Respondent determined that one deposit in this brokerage account for $1,500 was unexplained. The Cuban Currency Reform Act, whereby individuals were required to exchange old pesos for new pesos and old banknotes had to be replaced by new banknotes, was passed in August 1961. Under this law a Cuban family could only exchange 200 old pesos. Petitioner was born in the Canary Islands. He arrived in Cuba on February 22, 1955, and remained there until May 4, 1955, at which date he moved to the United States. Since that time the petitioner has not returned to Cuba. Neither his parents nor his wife's parents were born in Cuba. Opinion Petitioner reported adjusted gross income of $2,201.01 for the year 1960. However, in the same year, he deposited $32,685.49 in two bank accounts and made an unexplained deposit of $1,500 in his brokerage account. After making allowance for income which he reported and for bank deposits which he did explain, the respondent determined that petitioner had additional unreported income in the amount of $28,117.95 for 1960 resulting from unexplained deposits in the bank and brokerage accounts. It is well established that, in the absence of adequate books *167 and records, the Commissioner may determine a taxpayer's income by a bank deposits analysis. Estate of Esther M. Stein, 25 T.C. 940 (1956), affirmed sub nom. Levine v. Commissioner, 250 F. 2d 798 (C.A. 2, 1958); and Estate of Helene Simmons, 26 T.C. 409 (1956). Moreover, once the Commissioner has determined that unexplained bank deposits represent taxable income, the taxpayer has the burden of proving error in this method of reconstructing income. David Courtney, qn 28 T.C. 658 (1957). We have carefully considered the testimony of the petitioner as contained in his answers to the interrogatories and crossinterrogatories and we find the explanation given by him of the deposits to his bank and brokerage accounts incredible and contradictory. Consequently, we cannot afford it any weight. Petitioner claims that while employed as a waiter in 1960, he met a fellow waiter named George Suarez, who advised him that if he located persons wanting to send money to their families in Cuba, the petitioner could earn a 5 or 10 percent commission on the amounts received. Pursuant to this proposition, the petitioner states that he approached *168 several individuals in restaurants where he worked, asked them if they wished to forward money to Cuba, collected the funds, and passed them on to a contact man. He states that he raised over $28,000 in this manner, voluntarily arranging for his commissions, in the form of pesos, to be left with unnamed individuals in Cuba. He further states that the funds which he received were primarily in cash, that at the time they were turned over to him no written agreements or contracts were executed, and that he did not give any receipts to the parties who gave him money. In addition, he says that he gave all of these funds, including his own commissions, to George Suarez without any written agreement or receipt, and that he did not know the amounts of Suarez' commissions. This story is utterly fantastic, and the petitioner has failed to persuade this Court that individuals, previously unknown to him, gave him large sums of cash, in some instances up to $4,000, without requesting a receipt or any other assurance that their funds were used for the purpose intended and without knowing the identity of those parties transmitting their money to the designated persons in Cuba. Furthermore, the *169 contributing individuals had no idea as to the amount of the petitioner's or Suarez' commissions and they had no idea how much of their money would reach their families. Even the petitioner had no assurance that his alleged commissions were actually being kept for him since he did not know the Cubans supposedly safeguarding them. We cannot believe that the petitioner and those giving him money would exhibit any such degree of trust in absolute strangers. Likewise, the petitioner's explanation of why he wanted his commissions in the form of pesos held by strangers in Cuba is beyond the realm of credibility. Petitioner arrived in Cuba in February 22, 1955, and remained there until May 4, 1955, less than 3 months. Aside from this period, there is no evidence that he ever spent any time in Cuba. He testified in his deposition that neither his nor his wife's parents were born in Cuba and that his wife and children resided in New York City with him during 1960. Although he claims that he was paid in pesos held in Cuba because he had a family there, he has presented no evidence regarding this fact. An analysis of petitioner's bank accounts indicates that the amounts withdrawn were often *170 in odd dollars and cents and in almost every instance were different than the amounts deposited. This tends to show that the withdrawals may have been used to pay petitioner's personal expenditures. Since the petitioner's "commissions" were allegedly withdrawn in the form of pesos in Cuba and since George Suarez took his "commission" after the moneys were turned over to his contact, the amounts of the withdrawals would seemingly be in the same amounts as the deposits. Petitioner stated that he recorded the amount and the name of the individual immediately upon his receipt of funds. According to his own list, a maximum of 6 out of the 60 transactions on which he allegedly received money bear dates prior to September 1960. But examination of bank account No. X1112 reveals that, prior to September 1960, 20 deposits and 9 withdrawals were made. This also reflects on the credibility of petitioner's explanation of these deposits. Petitioner's evidence is based solely on his own statements. He testified that to the best of his knowledge George Suarez resided in New York City at the time of trial. However, Suarez was not called to testify. While the petitioner showed on his master sheet *171 63 transactions with persons who allegedly gave money to him to be forwarded to Cuba, not one individual was called to corroborate his statements despite his belief that most of them still reside in the New York City area. In view of the contradictions and inconsistencies in the petitioner's explanation of his bank and brokerage deposits, and in the absence of any corroborating evidence, we are compelled to hold that he has not met his burden of proving that the deposits were not taxable income. It therefore follows that respondent's determination must be sustained. Respondent also determined that the petitioner is liable for the addition to tax under the provisions of section 6653(a). The petitioner has the burden of proof with respect to this issue. David Courtney, supra. Because he failed to keep adequate books and records of his alleged activities and failed to give a satisfactory and credible explanation of the deposits to his bank and brokerage accounts, we think the respondent was correct in asserting the addition to tax. See Barry Meneguzzo, 43 T.C. 824 (1965); and Lark L. Washburn, 44 T.C. 217 (1965). Decision will be entered for *172 the respondent.