MATTHEW J. CANFIELD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Canfield v. Commissioner
Docket No. 278-79.
United States Tax Court
T.C. Memo 1980-533; 1980 Tax Ct. Memo LEXIS 51; 41 T.C.M. (CCH) 461; T.C.M. (RIA) 80533; December 3, 1980, Filed Matthew J. Canfield, pro se. Dan A. Lisonbee, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax under sections 6651(a) and 6653(a), I.R.C. 1954, [1] for the calendar years and in the amounts as follows: Deficiencies in
Additions to Tax, I.R.C. 1954
Year
Income Tax
Sec. 6651(a)
Sec. 6653(a)
1974
$ 9,642
$2,410
$482
1975
9,320
2,330
466
1976
11,837
2,959
592
*52 The issues for decision are (1) the amount of business expense and itemized deductions to which petitioner is entitled for each of the years here in issue, and (2) whether respondent properly determined additions to tax under sections 6651(a) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of the filing of the petition in this case petitioner resided at Rapid City, South Dakota. For the calendar year 1975, petitioner filed a document on Form 1040 which showed his name and address and that he was self-employed. In most of the spaces provided for showing income, deductions and tax liability an "xx" was placed. Attached to the Form 1040 were a number of documents. One of these documents was entitled "PETITION FOR REDRESS OF GRIEVANCES--REQUEST FOR ASSISTANCE--FILING UNDER PROTEST FOR 1975 AND AMENDING BY REFERENCE 1968 THROUGH 1975 TO INCLUDE THIS ADDITIONAL INFORMATION AND MATERIALS * * *." The other documents attached to the Form 1040 were mostly copies of articles with respect to foreign aid, the Federal Reserve system, abortions, Fifth Amendment rights, and activities of the Internal Revenue Service. *53 By letter dated August 19, 1976, the Director of the Internal Revenue Service Center, Ogden, Utah, advised petitioner that the Form 1040 he submitted for 1975 was not a valid income tax return. In a lengthy reply to this letter petitioner stated that the reasons for filing the Form 1040 as he did was to preserve his rights under the First, Fourth, Fifth, Seventh, Eighth, Ninth and Thirteenth Amendments to the United States Constitution. For each of the years 1974 and 1976, petitioner filed a Form 1040 similar to the one he filed for 1975. During all three years here in issue petitioner owned a truck and was engaged in the business of driving that truck throughout the United States for revenue. Petitioner had an agreement with Universal Transport, Inc. (Universal Transport), Rapid City, South Dakota, under which that company obtained freight for petitioner to haul, outlined petitioner's schedule, and when necessary advanced funds to petitioner for fuel, licenses, and some routine repair expenses. Universal Transport kept 35 percent of the gross revenues received for the hauls petitioner ran for its services to petitioner and forwarded to him the balance of 65 percent less expenses *54 they had paid for him. During each of the years here in issue, petitioner kept a record book in which he showed where he went on his driving trips and the cost of the meals he ate on the road. In addition, petitioner kept a logbook which showed where he drove, the mileage, and the number of meals he stopped to eat during the day. Petitioner kept a copy of this logbook but supplied the original to Universal Transport. Petitioner kept his record book along with receipts for repairs to his truck and other expenses he paid in connection with his business, the statements furnished him by Universal Transport, and other business records in his home filed in various boxes. Subsequent to 1976, petitioner experienced marital difficulties. During the course of these difficulties the local court ordered petitioner to stay away from the house in which he and his family had resided and in which his records were located. After petitioner and his wife were divorced petitioner's ex-wife gave him some of the boxes containing his records. The boxes which petitioner got from his exwife after the divorce contained very few of his basic records and primarily contained some of the vouchers furnished *55 him by Universal Transport. Petitioner was of the opinion that his ex-wife had either burned or thrown away the remainder of his records. To support his claimed expenses in this case petitioner obtained a copy of his logs for 1975 and 1976 from Universal Transport. Petitioner bought his truck in late 1973 for a total price of $13,100. He paid $2,000 in cash and financed the balance of the cost over a period of 36 months. Petitioner paid on the note secured by the truck at the rate of $379 a month. His first payment was made in early December 1973. The $379 consisted of payment of both principal and interest. During 1974, petitioner made the $379 payment each month and continued to make a $379 monthly payment each month through July 1975 when he refinanced the truck with a note for $10,000 payable in 24 months. He made monthly payments of $560 on this note throughout the balance of 1975 and the year 1976. About the end of July 1974, petitioner's truck had a breakdown which necessitated extensive repairs. Petitioner took the truck to Cummins Power Inc. (Cummins Power) for repairs. Repair of the truck took most of the month of August. On September 6, 1974, petitioner paid *56 $1,536.23 to Cummins Power on the $5,000 repair bill and agreed to pay the balance of the bill on a monthly basis. In October 1974, petitioner made an additional payment of $512.23 on this repair bill. His truck then experienced a breakdown which he considered to be because the repairs had not been properly made. He made no further payments on the repair bill. He took the truck back to Cummins Power on several occasions and informed them that he would not pay the balance of the repair bill until the truck was properly repaired. The truck was in and out of Cummins Power's shop for the balance of 1974. In early 1975 an employee of Cummins Power told petitioner to bring the truck in and it would be adequately repaired. After petitioner took the truck to Cummins Power, an employee of Cummins Power took the pump off the truck and told petitioner that the truck would not be returned until the balance of the repair bill was paid. Petitioner employed a lawyer to assist him in obtaining return of his truck. He paid the lawyer $135 for his services and paid the balance of the $5,000 repair bill of $2,951.54 to Cummins Power in order to obtain return of the truck. In approximately July *57 of 1975, after further breakdowns of the truck, petitioner took the truck to Comer's Truck Repair in Rapid City and had the truck repaired at a cost of $2,000. It was in order to obtain the $2,000 to pay this repair bill that petitioner refinanced the truck. Petitioner paid the $2,000 repair bill in 1975. During 1974, petitioner became ill with a back problem and was unable to drive his truck for approximately 7 months of that year. Petitioner employed a driver to drive the truck for a part of the period in 1974 that he was unable to drive himself. In 1974 petitioner paid the truck driver and the loaders who helped him on occasion load and unload the truck $2,553. Petitioner had withheld income taxes and one-half of the social security taxes on the wages he paid to the truck driver and in 1975 borrowed $900 in order to pay the withheld taxes and the employer's part of the social security taxes as well as some highway use tax to the Federal Government. In 1975 and 1976 petitioner employed loaders to assist him in loading and unloading the truck at a total cost in each of those years of approximately $1,000. Petitioner also in each of these years paid a Federal highway use tax *58 to the Federal Government. During each of the years 1974, 1975, and 1976, petitioner paid a $1,500 basic license fee for licenses on his truck. Universal Transport would actually pay this fee each year and withhold the amount paid on a monthly basis out of the funds otherwise due petitioner. In addition to the major repairs petitioner paid on his truck he had to pay minor repairs such as brake and transmission service to local repair companies along his runs and on occasion he paid for fuel in cash rather than charging it to Universal Transport. Petitioner carried property and liability insurance on his truck. This item was initially paid by Universal Transport and the amount paid was withheld by Universal Transport from the amounts due petitioner. Petitioner charged most of the gasoline he purchased to Universal Transport and the amounts of such charges were withheld by Universal from the revenues due petitioner. The following schedule shows the gross income received by petitioner from Universal Transport, the expenses paid by Universal Transport on behalf of petitioner for items other than property and liability insurance and basic license fee costs for the months of February, *59 July, September, and December 1974; the months of May and December 1975; and the month of January 1976. The schedule also shows expenses other than major repairs paid directly by petitioner in connection with the operation of his truck for each of these months: Month and
Petitioner's
Expenses
Paid by
Expenses Paid by
Year
Income
Universal Transport
Petitioner
1974
February
$1,415.52
$ 343.79
$ 137.52
July
2,610.07
713.21
535.58
September
3,555.61
1,614.90
381.12
December
1,821.42
1,065.54
723.17
1975
May
1,276.89
265.09
423.63
December
530.71
37.23
1,029.06
1976
January
1,415.56
415.15
192.03
Petitioner's gross income from his truck operation received from Universal Transport for the years 1974, 1975 and 1976 was $29,705, $29,279 and $32,963, respectively. During 1975 and 1976 petitioner drove approximately 11 months of the year. During 1974 petitioner personally drove 4 months and had a paid driver drive an additional 7 months. Petitioner traveled an average of $6,785 miles per month and had an average of 31 meals away from home during each of the months that he drove in 1974, 1975 and 1976. Petitioner generally slept *60 in the cab of his truck, although if he was away over a weekend he would get a motel room. Petitioner is entitled to the following business expense deductions from his incomes for the years indicated: 1974
1975
1976
Property and personal
liability insurance
$ 540
$ 540
$ 540
General license plates
1,500
1,500
1,500
Major repairs
2,048
4,952
0
Expenses for fuel, repairs
and state licenses paid by
Universal Transport
9,000
3,000
7,300
Employed labor
2,553
1,000
1,000
Repairs, gasoline and similar
expenses paid by petitioner
personally
4,442
7,260
4,285
Interest expenses on purchase
of truck
1,332
1,150
1,022
Meals consumed on the road
370
1,000
1,000
Highway use tax
200
200
200
Lawyer's fee
0
135
0
$21,985
$20,737
$16,847
Petitioner's net income from his trucking operations before deductions for depreciation on his truck was $7,720, $8,542 and $16,116 for the years 1974, 1975 and 1976, respectively. During the year 1974, petitioner paid approximately $420 interest on the mortgage on his home and $600 of real estate tax on his home. He paid approximately these same amounts in each of the years 1975 and *61 1976. Petitioner paid $90 interest in 1975 on the funds he borrowed to pay taxes to the Federal Government. Petitioner paid some state sales tax in each of the years 1974, 1975 and 1976. In the years 1974 and 1975, petitioner was ill and had some medical expenses. Petitioner also paid some interest in each of the years here in issue of funds he borrowed to purchase an automobile for his personal use. In his notice of deficiency respondent determined that petitioner had gross receipts of $29,705, $29,279, and $32,963 for the years 1974, 1975 and 1976, respectively. He determined that petitioner was entitled to depreciation on his truck of $2,817 in each of the years 1974 and 1975, and $1,628 in 1976. Respondent allowed petitioner no other business expense deductions. He allowed him one personal exemption in each of the years 1974, 1975 and 1976 of $750 and a standard deduction of $1,000, $1,300 and $1,400 for the years 1974, 1975 and 1976, respectively. Respondent computed petitioner's tax on the basis of a married person filing separately. Respondent determined that petitioner was liable for an addition to tax under section 6651(a) for failure to file a return in each *62 of the years here in issue and an addition to tax under section 6653(a) in each year for negligence and disregard of rules and regulations. OPINION The Forms 1040 petitioner filed contained no figures of income and deductions from which his taxable income and income tax could be computed. We have held that a Form 1040 of the type filed by petitioner is not an income tax return within the meaning of section 6651(a). Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). In this case we hold that petitioner did not file an income tax return in any of the years 1974, 1975 and 1976. Since petitioner filed no tax return, respondent computed his income for each year here in issue from the records of payments he received through Universal Transport. Petitioner agrees to the correctness of these amounts. Petitioner does not question the depreciation deduction as determined by respondent in the notice of deficiency but contends that he had numerous other expenses in connection with the operation of his truck which respondent did not allow as business expense deductions. Petitioner originally had books and records that showed the *63 cost of the meals he ate on the road and receipts for his expenses in operating his truck for each month during each of the years here in issue.He had these books available when the agent first contacted him with respect to the investigation of his tax liability. However, these books were not made available to the agent. It is petitioner's position that it was incumbent on the agent to figure out his expenses in the same manner that the agent determined his income. In our view, when a taxpayer makes no effort to substantiate deductions, it is not incumbent on the agent to try to reconstruct those deductions. Nevertheless, petitioner did bring to the trial of this case the records he had after his records had been unavailable to him during the divorce proceedings, and attempted to reconstruct from the records of Universal Transport some of the records which he did not have. On the basis of the records available, we have determined petitioner's business expense deductions in connection with the operation of his truck. We have used the actual basic license plate cost and major repair costs each year determined by certain documentary evidence in the record and petitioner's testimony. *64 We have reconstructed interest paid by petitioner on his truck on the basis of an estimate of the interest included in the total monthly payments made by petitioner each year on the loans which he made to purchase his truck and to refinance it. We have reconstructed petitioner's payments for employed helpers partially on the basis of records produced and partially on the basis of petitioner's testimony. The other expenses paid by Universal Transport for petitioner and withheld from his gross income have been reconstructed on the basis of the best estimate we can make of such expenses for the entire year from the records which are available. We estimated monthly expenses from the records on the basis of such amounts reconstructing yearly costs by assuming petitioner's truck was driven 11 months a year. We considered both the actual average monthly costs as well as those costs in relation to the revenues received and the testimony with respect to the unusually high repair costs of petitioner's truck in 1974 and the first half of 1975. We estimated the amount of expenses paid by petitioner personally in each month in connection with the operation of his truck in the same manner *65 as we did the expenses paid by Universal Transport. The highway use tax payment by petitioner is based on his testimony. Under section 274(d) and section 1.274-5(c), Income Tax Regs., petitioner is not entitled to deductions for travel expenses unless they are properly substantiated. Since petitioner had no evidence to show the cost of motel rooms which he used on weekends, we have allowed him no deduction for such an expense.
Although petitioner did not have available complete records of the cost of his meals because they were discarded or burned by his wife when he had no access to his home, he obtained records from Universal Transport which showed the number of meals he ate on the road. Section 1.274-5(c) 5, Income Tax Regs., provides: (5) Loss of records due to circumstances beyond control of taxpayer. Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures. Here, unlike petitioner *66 in Gizzi v. Commissioner, 65 T.C. 342 (1975), petitioner did not voluntarily move out of his home and leave his records but was under court order not to go into his former home. This case is more comparable to the recent case of Murray v. Commissioner, T.C. Memo. 1980-500. Although the record is not completely clear, it does appear that petitioner's records were destroyed or burned by his wife while she and petitioner were separated and petitioner had no access to his home because of a court order. We have therefore concluded that petitioner's loss of his records of the cost of his meals was because of circumstances beyond his control. From the records petitioner was able to obtain from Universal Transport, the parties stipulated as to the number of meals petitioner ate on the road when he drove. Petitioner's testimony was that the average cost of the meals which he ate on the road was $3.00. For the year 1974, petitioner testified that he was laid up for approximately 7 months of the year and had a substitute driver. We have therefore, in reconstructing the cost of petitioner's meals for that year, assumed that petitioner drove for 4 months *67 during the year and have determined the cost of his meals on that basis to be $370. For the other years we have accepted the stipulation of the parties that petitioner drove for approximately 11 months each year and on this basis determined the cost of his meals to be $1,000 for each of the years 1975 and 1976. In determining petitioner's itemized deductions, we have found the amount of mortgage interest and real estate taxes he paid on his home in accordance with petitioner's testimony. We have found interest on the loan petitioner took out to pay certain taxes to the Internal Revenue Service in accordance with petitioner's testimony. Petitioner testified that in addition he paid interest on an auto loan and had deductible medical expenses. Petitioner could not recall either of these amounts and therefore did not testify as to the amounts of either of these items. For this reason we have not found any amount for such items. Petitioner testified with respect to payment of state sales taxes and that amount can be computed on the basis of the tables which respondent permits to be used for the determination of sales taxes paid. Since petitioner failed to file a tax return *68 for any of the years here in issue and has shown no reasonable cause for such failure, he is liable for additions to tax under section 6651(a). The only remaining issue is whether petitioner is liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations for each of the years here in issue. The Forms 1040 filed by petitioner were in such disregard of rules and regulations as not to be returns.Petitioner has shown no reasonable explanation of why he filed Forms 1040 in this manner. Had petitioner used his records to file adequate returns, it would not have been necessary for respondent to reconstruct his income. Also, other than petitioner's testimony with respect to the records he kept as to his meals when on the road, petitioner has failed to show in detail the type of records he kept had his records not been destroyed. When respondent determines an addition to tax for negligence, the burden is on petitioner to show that determination to be in error. Courtney v. Commissioner, 28 T.C. 658, 659-660 (1957). Petitioner has not shown respondent's determination of an addition to tax for negligence under section *69 6653(a) to be in error and we therefore sustain that determination. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect in the years in issue.↩