Eugene E. Tehan and Charlotte Tehan v. Commissioner.
Tehan v. Commissioner
Docket Nos. 55597, 55598.
United States Tax Court
T.C. Memo 1959-140; 1959 Tax Ct. Memo LEXIS 111; 18 T.C.M. (CCH) 616; T.C.M. (RIA) 59140; June 30, 1959
*111 Held: 1. Respondent was justified in making use of the increase in net worth plus nondeductible expenditures method in reconstructing petitioner's net income for each of the years in issue under the facts and circumstances. 2. The amounts of petitioner's taxable income for the years in issue are determined. 3. Negligence penalty under section 293(a) was not shown to have been improperly imposed. Martin J. Torphy, Esq., 231 West Wisconsin Avenue, Milwaukee, Wis., for the petitioners. R. B. Wolter, Esq., and James T. Wilkes, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax for the years 1947-1949, inclusive, and additions under section 293(a), 1939 Code, as follows: Year
Deficiency
Sec. 293(a)
1947
$12,174.48
$608.72
1948
265.54
13.28
1949
1,740.54
87.03
By amendment to his answer, respondent has made claim, under section 272(e), for increase in the deficiency and the addition under section 293(a) for 1949 to $5,063.10 and $253.26, respectively. It is agreed under stipulation of the parties that there is no deficiency or addition to tax for 1948. The questions for decision are: (1) Whether the respondent *112 erred in computing the amount of the petitioners' tax liability for 1947 and 1949. (2) Whether any part of a deficiency, if any, is due to negligence, or intentional disregard of rules and regulations so that the additions to tax under section 293(a) were properly made. Findings of Fact The petitioners are residents of Milwaukee, Wisconsin. Returns were filed timely for the taxable years with the collector of internal revenue for the district of Wisconsin. Eugene E. Tehan filed an individual return for 1947; joint returns were filed for 1948 and 1949. Since the issues relate only to Eugene E. Tehan, he is referred to hereinafter as the petitioner. In the taxable years, petitioner's family consisted of five individuals, himself, his wife, two sons, and one daughter. The children were 17, 15, and 14 years old, respectively. The family lived on one of the farms. Petitioner is a truck farmer. During the taxable years he carried on farming operations as a sole proprietor on two farms comprising 40 and 25 acres, respectively, which he owned, and on 110 acres of rented land. The 175 acres of farm lands are located near Milwaukee. Petitioner's farms produced crops of a variety of vegetables *113 and truck produce which he sold to commission houses, brokers, wholesalers, and chain stores located in Milwaukee, Chicago, and St. Louis. Some sales were made at a farm. Sales were made for cash or on consignment. Petitioner, who was born in 1905, has been engaged in farming activities all of his life. After working on various farms, including his father's, he began his own farming business in 1930, and he has operated his own business since then. Petitioner's formal education ended upon his completion of grade school. He has never received any training in any kind of bookkeeping or accounting and he does not know how to keep and maintain the simplest accounting records. Elroy W. Buchholz, a bookkeeper, who was a salesman for the stockbrokerage firm, Lee Higginson, in 1947 and thereafter, kept an informal record, in the nature of work papers, of petitioner's sales and expenses, and net receipts for the years 1947-1949, inclusive. Buchholz did the bookkeeping work for petitioner without receiving any compensation for his services, as a personal favor. Buchholz and Tehan are friends. Petitioner's income tax returns for the years 1947-1948, inclusive, were prepared by Louis M. Saksefski, *114 who is now a vicepresident of the Home State Bank in South Milwaukee, and who was cashier of the bank. Saksefski is not a certified public accountant; he has taken correspondence courses in accounting and has had experience in that field during 30 years. The returns were prepared on a cash basis. Petitioner did not have a set of any permanent accounting records. He did not keep a cashbook, journal, or ledger. The figures put on petitioner's returns by Saksefski were obtained by him from information and material which he received from Tehan, such as the worksheets prepared by Buchholz showing receipts, expenditures, and a trial balance, and data showing Tehan's transactions in securities, his dividends, and figures relating to interest. Saksefski prepared the depreciation schedules in the returns. Saksefski did not check to verify the figures on Buchholz's worksheets against original sales slips, invoices, or cancelled checks. Buchholz did not make entries in any regular accounting book such as a cashbook or journal. The records he made were on wide, columnar, accountant's work papers, and the work papers constituted an informal cash receipts and disbursements record for the farming *115 business for each year. Buchholz went to petitioner's home at intervals of 1 week, or several weeks. Petitioner gave him invoices of sales, sales slips, bills, check stubs, bank statements, and petitioner's notations of his cash disbursements. Buchholz did not examine cancelled checks but, instead, he referred to check stubs. Buchholz made entries of the amounts of receipts and disbursements on the work papers. He set up columns for sales of various products under headings such as corn, tomatoes, and peppers, and he made entries under appropriate headings of the amounts of disbursements for repairs, taxes, crates, bags, gasoline, oil, fertilizers, seeds, ice, and other items of expense. At the end of each year, he added all of the columns; he made a trial balance; and he made up a detailed summary of receipts and expenditures. Petitioner's income tax returns for 1947, 1948, and 1949 reported gross receipts, expenses, depreciation, dividends, interest, and net income as follows: 1947
1948
1949
Gross Farm Income
$129,446.64
$152,441.82
$128,288.02
Less: Expenses
116,006.65
132,903.56
124,286.31
Depreciation
5,813.90
7,117.91
9,263.65
Total
$121,820.55
$140,021.47
$133,549.96
Net Farm Profit
$ 7,626.09
$ 12,440.35 *
$ (5,261.94)
Dividends
905.45
908.70
1,258.22
Interest
120.00
0
0
Total
$ 8,651.54
$ 13,349.05
$ (4,003.72)
Net Capital Loss
278.16
192.60
0
Taxable Income
$ 8,373.38
$ 13,156.45
$ (4,003.72)
Standard Deduction
500.00
1,000.00
0
Net Income
$ 7,873.38
$ 12,156.45
$ (4,003.72)
*116 In the returns, the expenses of farming operations were listed in detail. The parties have stipulated that the figures set forth in petitioner's income tax returns agree with the figures in Buchholz's records except for minor errors. Petitioner paid his farm laborers in cash each week. In 1947, he paid wages to six regular employees, other than transient workers and Jamaican laborers, in the amount of $10,860, which represented the total of $2,700, $2,400 $2,080, $1,840, $960, and $880, which were the payments to the six employees, respectively. During the years 1930 through 1946, petitioner did not receive any inheritance, and any gifts he received were limited to inconsequential presents on his birthday or at Christmas. For the years 1931 through 1946 petitioner earned and correctly reported net income to the State of Wisconsin in the following amounts: Net
Year
Income
1931
$1,249.83
1932
752.25
1933
1,218.28
1934
1,347.73
1935
2,838.37
1936
3,760.75
1937
3,785.00
1938
(36.36)
1939
$4,288.42
1940
3,511.10
1941
5,586.25
1942
6,181.83
1943
5,224.07
1944
9,311.58
1945
7,594.87
1946
7,566.47 Petitioner maintained a checking account *117 at the Bay View State Bank in Milwaukee during the years 1947, 1948, and 1949. All deposits to this account were from sales, with the exception of small amounts of interest which were deposited in the account. Bank deposits were: $182,935.66 in 1947, $129,829.95 in 1948, and $119,772.87 in 1949. Petitioner's balance in his checking account in the Bay View State Bank, which was his only bank account, on December 31 of each of the years 1946, 1947, 1948, and 1949, was as follows: Date
Bank Balance
12-31-46
$9,308.85
12-31-47
7,409.96
12-31-48
1.95
12-31-49
157.68
The total amount of petitioner's sales was not deposited in the bank. Petitioner followed a practice of withholding an amount of cash instead of depositing the full amount of checks received in payment for produce. Petitioner estimated cash expenditures which were to be made and he withheld an amount from deposits to cover some of them. In such instances the deposit slip would list the entire amount of the checks deposited, and from the total amount there was deducted an amount designated "less cash," or "L.C.," for the cash received out of the checks at the time of deposit. The difference represented the net amount of the deposit which *118 appeared as a credit in Tehan's account. The practice of obtaining cash out of checks deposited was followed because Tehan always paid wages to his employees in cash. The amounts paid for wages were never deposited in the bank. During the years 1947, 1948, and 1949, the amounts of cash withheld from deposits were not less than the wages paid in those years. These amounts were: $54,062.54 in 1947, $54,713.30 in 1948, and $58,647.32 in 1949. The examining agent of the respondent made a partial analysis of deposits for the year 1947 which disclosed that out of approximately 30 deposits Tehan withheld cash out of 25. The examining officer did not examine all of the deposit slips for 1947, but those which he examined showed "less cash," or cash, received in the total amount of $28,053.97. During January 1951, the then deputy collector of internal revenue, John Havey, began an income tax audit of the records of account of Eugene Tehan and Charlotte Tehan for the years 1947, 1948, and 1949. He requested Tehan to furnish him with all of his books and accounting records for those years. Upon this initial request, Havey was given only Tehan's check stubs and cancelled checks in support of disbursements. *119 In support of sales, Havey was given a carton containing purchase invoices under the letterheads of the various brokers, wholesalers, and chain stores with which the petitioner dealt, i.e., invoices prepared by the purchasers for their own records, a copy of which was given to Tehan at the time of payment. These purchase invoices are sometimes referred to as cash slips, sales slips, cash tickets, or invoices. The invoices were loosely kept in the carton and were not in any order or arrangement. The examining officer was given no record of sales prepared by or for Tehan. The purchase invoices appeared to be his only sales records. The only records presented to Havey in support of expenses and capital expenditures were check stubs and unsorted cancelled checks. Check stubs were missing in some cases, and in other cases there was no explanation on the stub about the purpose of the expenditure. When explanations were made on the check stub they were not, in most cases, adequate to inform the agent as to the purpose for which the check was written. The unexplained checks were numerous, 10 to 15 a year, and they were in substantial amounts. Checks were sometimes made out to cash. In such *120 instances, the agent was unable to determine the purpose of the disbursement or to determine whether the purpose was business or personal, unless the agent recognized the endorser. Havey attempted to make a distrib tion sheet of the petitioner's expenses from the record supplied but because of the inadequacy of the records he was unable to obtain any satisfactory results. He could not satisfy himself as to the correct items of expense during the years in question. The examining officer, in an attempt to justify petitioner's sales records, put all purchase invoices in order, separated them by individual purchasers, and added them to arrive at a gross sales figure for each of the years 1947, 1948, and 1949. The resulting figures were, in a major respect, not in agreement with the sales figures on the tax returns. For 1947 alone the discrepancy amounted to approximately $30,000. In an effort to verify petitioner's reported sales by correspondence with the various firms who purchased produce from Tehan, the agent wrote to approximately 15 firms requesting a statement showing what purchases they made from Tehan during 1947, 1948, and 1949. Below is a summary of what is shown in Tehan's *121 records of sales to each of three purchasers, what the records of those firms show, and the amount of discrepancy. The following schedule is only an illustration of the kind of information obtained by the agent and it does not cover all of petitioner's sales in each year: Company
Company Records
Invoices
Discrepancy
1947
Vegetable Packing
$12,117.23
$10,582.32
$1,534.91
Godfrey
1,293.48
634.28
659.20
1948
Vegetable Packing
$18,677.91 *
$18,375.56
$ 302.35
Godfrey
7,717.25
4,911.25
2,806.00
1949
Vegetable Packing
$15,179.28 *
$14,973.78
$ 205.50
Godfrey
5,901.85
4,863.10
1,038.75
Anton-Argires
5,892.95
3,502.47
2,390.48
In addition, the agent made an investigation of bank deposits. He found deposits considerably in excess of reported sales, and he found that there were checks received in payment for sales which were never deposited. He brought these deposits to the attention of Tehan, but received no explanation. From the records available, Havey attempted to determine that the amounts reported for sales and for expenses were accurate, but because of the inadequacy of the records given *122 him he was unable to determine the correct items of income or expense of Tehan during 1947, 1948, and 1949. Because of the inadequacy of the records furnished to him, the large discrepancies between reported sales and sales shown by third-party records, and the record of unaccountably large deposits as compared with reported sales, the agent resorted to the net worth increase plus nondeductible expenditures method of reconstructing petitioner's income. Respondent now relies upon a revised net worth statement. Petitioner made improvements on his farm during the year 1947, as follows: Improvement
Cost
Rawson Ave, storage shed
$14,856.82
Irrigation equipment
3,063.80
Pump
2,083.00
Wiring of pump shed
292.45
Onion vent system
1,090.00
Pipe and fittings
2,504.48
50 gate valves
430.85
Pipe welding
840.00
$25,161.40
Petitioner paid tuition to the schools which his children attended in 1947 and 1948, in amounts not less than $111 and $295, respectively. On December 13, 1947, petitioner purchased a radio-phonograph with cabinet, at a cost of $812.50. During May and June of 1948, petitioner purchased house furnishings at a total cost of $1,468.71. On October 23, 1948, he purchased a vacuum cleaner at a cost of *123 $66.88. During 1949, petitioner purchased household furnishings at a total cost of $1,059.35. On December 31, 1946, 1947, 1948, and 1949, petitioner had $100 in cash in his pocket and $4,000 in cash in a box in his home. This cash was kept available for the payment of wages. On December 31, 1946, petitioner had $15,000 in cash in a safedeposit box in the Bay View State Bank. This amount was withdrawn during 1947 for making payments for improvements. Petitioner's cash outside of bank accounts is summarized below: Place Kept
12-31-46
12-31-47
12-31-48
12-31-49
Pocket
$ 100
$ 100
$ 100
$ 100
Home
4,000
4,000
4,000
4,000
Safe-deposit box
15,000
0
0
0
Total
$19,100
$4,100
$4,100
$4,100
Petitioner spent $5,000 in cash for the living expenses of himself and his family in each of the years 1947 and 1949. On December 31, 1946, petitioners owned common and preferred stock in various corporations having a total cost of $15,916.56. Petitioner paid Federal income taxes as follows in the years 1947-1949: 1947
$ 843.98
1948
1,137.23
1949
1,724.70
Petitioner paid insurance premiums during 1947, 1948, and 1949 in amounts of not less than $600 per year. The bookkeeping records kept by petitioner for the taxable years were inadequate *124 to clearly, accurately, and fully reflect his entire income, and the respondent was, therefore, justified in computing his income by the net worth method. The following net worth statement correctly reconstructs petitioner's taxable income for each of the years 1947-1949, inclusive: 12-31-46
12-31-47
12-31-48
12-31-49
Cash on hand
$ 19,100.00
$ 4,100.00
$ 4,100.00
$ 4,100.00
Cash in bank
9,308.85
7,409.96
1.95
157.68
Securities
15,916.56
11,996.25
12,696.25
12,696.25
Equipment
43,245.37
59,929.58
73,214.32
95,289.64
Land and improvements
22,000.00
37,149.27
52,521.84
77,718.07
Personal effects
0
827.00
2,362.59
3,421.44
Total assets
$109,570.78
$121,412.06
$144,896.95
$193,383.08
Liabilities
$ 415.88
$ 1,096.88
$ 21,044.49
$ 45,752.28
Depreciation reserves
22,486.52
26,169.64
32,218.24
39,955.52
Total
$ 22,902.40
$ 27,266.52
$ 53,262.73
$ 85,707.80
Net worth
$ 86,668.38
$ 94,145.54
$ 91,634.22
$107,675.28
Less: Previous net worth
86,668.38
94,145.54
91,634.22
Increase in net worth
$ 7,477.16
$ (2,511.32)
$ 16,041.06
Federal income tax paid
834.98
1,137.23
1,724.70
Insurance premium paid
600.00
600.00
600.00
Cost of living
5,000.00
5,000.00
5,000.00
Total
$ 13,912.14
$ 4,225.91
$ 23,365.76
Capital gain adjustment
(297.21)
0
0
Net income
$ 13,614.93
$ 4,225.91
$ 23,365.76 *
*125 The following schedules show the amount of petitioner's taxable net income for 1947 and 1949, the amounts of income or loss reported on the returns, and the amounts of petitioner's unreported income: 1947
Net income
$13,614.93
Income reported
7,873.38
Unreported income
$ 5,741.55
1949
Net income
$23,365.76 **
Loss reported
(4,003.72)
Unreported income
$27,369.48 **
Part of the deficiency for each of the years 1947 and 1949 was due to negligence. The stipulated facts are found as stipulated; the stipulations of facts are incorporated herein by this reference. Opinion Respondent determined that petitioner's records were inadequate to clearly reflect his income, and he computed the amount of taxable income by the net worth method, pursuant to the authority granted him by section 41, [1]1939 Code. Petitioner contends that his records were adequate to *126 clearly reflect his income. As a farmer, petitioner is excused from the requirement of keeping "permanent books of account or records, including inventories * * *", by Regulations 111, section 29.54-1. This does not mean, however, that petitioner was not required to keep some kind of accurate records of his receipts and disbursements, from which the amount of his income could be determined. Regulations 111, section 29.41-1, are applicable to all taxpayers, without exception, even in the case of farmers, and it provides that "If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner *127 as in the opinion of the Commissioner clearly reflects it." Regulations 111, section 29.22(a)-7, [2] prescribe what items are to be included in the gross income of a farmer who reports income on the cash basis, and it requires that he shall attach form 1040F to his return. Form 1040F contains spaces for the itemized listing of farm receipts and expenses. It is clear that a farmer who operated on the scale which petitioner did, could not have accurate information as to his receipts and expenses, with which to fill out form 1040F, unless he kept adequate records. The reference in the last paragraph of Regulations 111, section 29.22(a)-7, to farmers who keep "no records," must be read in the context of Regulations 111, section 29.54-1, where farmers are excused from keeping permanent records; but without records of any kind, it would be impossible for farmers, like other taxpayers, to properly report their income, or for the Commissioner to audit their returns. The clear intent of section 41 and of section 29.41-1 of the regulations is that, although a farmer is not required to keep permanent records, he must keep accurate and complete records of all of his receipts and disbursements from *128 which the Commissioner can determine the full and correct amount of his taxable income. The Commissioner cannot accept mere guesses, or records which have been shown to be unreliable, as substantiation of the income and expenses reported in a farmer's returns. If a farmer, like any other taxpayer, fails to keep accurate and complete records, the Commissioner can resort to some other *129 means of determining his taxable income, such as the net worth method. Cf. Estate of W. D. Bartlett, 22 T.C. 1228. In the instant case, the unreliability of such records as petitioner kept has been amply demonstrated. As we said in Morris Lipsitz, 21 T.C. 917, 931, affd. 220 Fed. (2d) 871, certiorari denied 350 U.S. 845: "* * * when the increase in net worth is greater than that reported on a taxpayer's returns or is inconsistent with such books or records as are maintained by him, the net worth method is cogent evidence that there is unreported income or that the books and records are inadequate, inaccurate, or false. It is not correct to say that the use of the net worth method is forbidden where the taxpayer presents books from which income can be computed, for the net worth method itself may provide strong evidence that the books are unreliable. * * *" Respondent's revised net worth statement provides strong evidence that petitioner's records are unreliable. Petitioner's return for 1947 discloses net income in the amount of $7,873.38, whereas the net worth statement shows an increase in net worth during that year, in the amount of $22,477.16. Petitioner's return for 1949 *130 discloses a net loss in the amount of $4,003.72, whereas the net worth statement shows an increase in net worth during that year in the amount of $16,041.06. Petitioner contends that respondent erred in not attempting to compute his income from such records as he kept. This argument is without merit. As we said in Harry Gleis, 24 T.C. 941, 948, affd. 245 Fed. (2d) 237: "* * * there is nothing in section 41 of the Internal Revenue Code of 1939, on which section respondent relies as authority for his action in the premises, which makes mandatory a showing by respondent that books maintained by a taxpayer are wholly inadequate or that he has exhausted all efforts to compute income therefrom before he may properly exercise the broad authority granted him in the statute. * * *" The accounting records of petitioner are worksheets prepared by Buchholz on which amounts of income and expenses were entered. These were not given to the agent investigating petitioner's returns until after the agent had begun to prepare a net worth statement. Initially, petitioner gave the agent only a carton of invoices received from purchasers and a bundle of check stubs and cancelled checks. The agent found *131 that the total amount of the invoices for each year did not agree with the total gross sales reported in the returns. The figures in the worksheets agree with those in the returns, but they do not agree with the total amount of the invoices for each year, despite the fact that Buchholz testified that he entered the amounts of receipts on the worksheets from the invoices given him by petitioner. In addition, the agent found that, in many cases, the records of companies to which petitioner had made sales of produce were not in agreement with the total amount of invoices from that company in petitioner's possession. For example, invoices in petitioner's possession from E. R. Godfrey and Sons for 1948 total $4,911.25, whereas Godfrey's records show purchases from petitioner during that year in the amount of $7,717.25, a difference of $2,806. It is clear that items of income in substantial amounts were not recorded in Buchholz's worksheets. Furthermore, the agent found that the check stubs and cancelled checks given him were inadequate to determine the amounts of business expenses, since it was not possible to tell whether many checks were drawn for business or personal purposes. Buchholz *132 testified that he entered the amounts of expenses in the worksheets from the check stubs. The record clearly shows that petitioner's records were wholly unreliable both as to receipts and expenses. Petitioner has failed to make a satisfactory showing from his records of the amounts of his entire taxable income. Petitioner had the burden of proving the correct amount of his farm income and other income for each of the taxable years. He has relied upon the informal worksheets prepared by Buchholz. He did not engage the services of a professional accountant to make a thorough audit of all of the separate items in his possession of receipts and expenditures in order to prove that the worksheets of Buchholz were complete and accurate, or to prove the full and correct amount of his taxable income for each year. The respondent's determinations have the legal presumption of being correct, and petitioner's burden of proof involves proving that the determinations are invalid. Reinecke v. Spalding, 280 U.S. 227; Welch v. Helvering, 290 U.S. 111, 115; Hoefle v. Commissioner, 114 Fed. (2d) 713; Birnbaum v. Commissioner, 117 Fed. (2d) 395; Greenfeld v. Commissioner, 165 Fed. (2d) 318. See *133 9 Mertens, The Law of Federal Income Taxation (1958), sec. 50.61. It is not a sufficient showing to rebut the presumptive correctness of respondent's determinations for petitioner to testify that his returns were correct, or for Buchholz to testify that his worksheets, from which the returns were prepared, were correct. Furthermore, respondent has demonstrated that such accounting records as were kept require a complete audit if very substantial discrepancies are to be satisfactorily explained and proper adjustments made. But petitioner failed to produce competent proof that the apparent discrepancies were nonexistent, and he has not given adequate explanation of the reasons for their existence. Since petitioner has failed to prove the accurate and full amount of his taxable income for each year, we have no alternative but to turn to the increase in net worth and nondeductible expenditures method, which the respondent has used in his determination of the deficiencies, for the answer to the problem. As was stated in David Courtney, 28 T.C. 658, 665, and can be said here with equal validity, under all of the circumstances and upon the entire record before us, we cannot say that the *134 respondent exceeded the authority granted him in section 41 in disregarding the petitioner's informal accounting records, the worksheets, and in looking to other means of establishing petitioner's taxable income. The chief question is whether respondent's revised net worth statement correctly determines the amount of petitioner's taxable income for each of the years 1947 and 1949. In his revised net worth statement, respondent determined that petitioner realized net income in the amounts of $29,623.93 for 1947 and $24,365.76 for 1949. Petitioner contends that respondent's net worth statement is erroneous. The burden of proving that respondent's net worth statement is erroneous, is upon petitioner, David Courtney, supra, except to the extent that respondent claims an increase in the deficiency for 1949, by amendment to his answer, with respect to which the burden of proof is on respondent. See Rule 32 of the Court's Rules of Practice. The increase in the deficiency for 1949 is entirely the result of changes in respondent's original net worth statement which were agreed to by the parties in their supplemental stipulation of facts and were inserted in respondent's revised net worth statement. *135 The supplemental stipulation of facts, therefore, disposes of respondent's burden of proof. Some, but not all, of the items which comprise respondent's revised net worth statement were agreed to by the parties in their original stipulation of facts and supplemental stipulation of facts. With respect to the remaining items in the revised net worth statement, the amounts of which have not been agreed to, petitioner has attempted to introduce evidence only as to the amount of cash on hand and the amount of expenditures for living costs. Petitioner has entirely failed in his burden of proof as to all other items in the net worth statement which are not agreed to in a stipulation. We need consider, therefore, only the items in the revised net worth statement about which there remains disagreement, namely, undeposited cash on hand and living expenses. We leave undisturbed respondent's determinations of the amounts of all other items of assets. In Holland v. United States, 347 U.S. 1007, there was pointed out the importance of establishing a definite opening net worth, particularly the amount of cash on hand at the beginning of the net worth period. See, also, Smith v. United States, 348 U.S. 147; *136 United States v. Calderon, 348 U.S. 160. We think that respondent's position that petitioner had only $100 undeposited cash on hand is unrealistic. Cf. Michael Potson, 22 T.C. 912, affd. 230 Fed. (2d) 336; Estate of W. D. Bartlett, supra.The nature of Tehan's business operations was such that he kept at all times a substantial amount of cash on hand, a large amount of which was used to pay wages. Also, since Tehan had been engaged in operating his own farm for 26 years, it is reasonable to believe that he would have accumulated more cash savings than the balance of about $9,300 in his bank account at the end of 1946. Also, he made improvements on his land during 1947 which cost in excess of $25,000. We accept petitioner's testimony explaining that he misunderstood the contents of the statement he signed on February 14, 1951; that he intended to refer only to the amount of cash in his pocket; and that he did not refer to cash kept at home and in his safe-deposit box. However, the evidence before us does not support petitioner's contention that the amount of his undeposited cash on December 31, 1946, was $26,000, or $27,000. In support of that claim, petitioner relies wholly *137 on his own testimony as to the amounts; he did not substantiate the amounts. Furthermore, his investments in securities in the amount of about $15,900 represented savings, as well as his capital assets. We are not bound to accept petitioner's uncorroborated testimony on this point. Carmack v. Commissioner, 183 Fed. (2d). Upon the entire record and using our best judgment we have concluded and found that petitioner had undeposited cash on hand in the amounts of $19,100 on December 31, 1946, and $4,100 on December 31 of 1947, 1948, and 1949. Cf. Cohan v. Commissioner, 39 Fed. (2d) 540, 544; Estate of W. D. Bartlett, supra, 1231. In arriving at the above amounts we have taken into account petitioner's testimony that he always kept cash in his pocket in the amount of about $100, and that he always kept about $4,000 in cash in a box in his home to be used to pay wages. We have concluded, also, that petitioner had an additional amount of $15,000 in cash in his safe-deposit box on December 31, 1946, and that this amount was used in 1947 in payment for some of the improvements made in that year. The next question for decision is the amount of cash expenditures in 1947 and 1949 for the living *138 expenses of petitioner and his family. Respondent has determined that petitioner's expenditures for that purpose amounted to $6,000 in each year. Petitioner contends that such expenditures were only $3,000 per year. Taking into account such evidence as is before us, it is concluded that petitioner's cash expenditures for living expenses amounted to $5,000 in 1947 and 1949. The remaining question for decision is whether any part of the deficiency for each of the years 1947 and 1949 was due to negligence, or intentional disregard of rules and regulations but without intent to defraud, so as to make petitioner liable for 5 per cent additions to tax, under section 293(a). The burden is upon petitioner to prove that imposition of the additions is erroneous. W. B. Mayes, Jr., 21 T.C. 286, 291. Petitioner has failed to prove that a part of each of the deficiencies was not due to negligence. It is true that a "finding that the return is incorrect, or that the taxpayer did not keep proper or complete books of account, or that his calculations are confusing is not enough" to sustain imposition of additions to tax for negligence. Bennett v. Commissioner, 139 Fed. (2d) 961, 966. However, the *139 circumstances surrounding the failure to keep adequate books or records may show that such failure was due to negligence. Leslie A. Sutor, 17 T.C. 64, 68-69; L. Glenn Switzer, 20 T.C. 759, 766. It is concluded that petitioner's failure to keep adequate accounting records of his business was due to negligence. Receipts were entered in petitioner's informal records from invoices which petitioner gave to his bookkeeper. The inference is inescapable that the failure to record some receipts was due to petitioner's negligent failure either to preserve some invoices or to give them to his bookkeeper. In carrying on a business the size of petitioner's, a more systematic method of filing invoices and keeping records should have been followed than merely to place invoices in a desk drawer. The haphazard nature of petitioner's record keeping is shown by the fact that the only records he initially gave the agent investigating his returns were a carton of unsorted invoices and a bundle of check stubs and cancelled checks. Failure to set up a reasonably orderly method of recording income and expenses was negligent. In our opinion, petitioner has wholly failed to give any reasonable justification *140 for his failure to make better arrangements either by hiring someone to keep his records in an understandable condition, or by himself keeping them in order. Petitioner cannot avoid responsibility for this omission by placing the responsibility on his casual bookkeeper who received no compensation for his services. Vern W. Bailey, 21 T.C. 678, 687; H. A. Hurley, 22 T.C. 1256, 1266, affd. 233 Fed. (2d) 177. Although petitioner had little knowledge of bookkeeping, he was negligent in failing to have his erstwhile, free-of-charge bookkeeper maintain accurate, complete, and adequate records and in not giving the bookkeeper the correct figures of the volume of sales. Petitioner must bear the responsibility for his agent's failures. Hyman B. Stone, 22 T.C. 893, 906. It is held that part of the deficiency for each of the years 1947 and 1949 is due to negligence, and that the additions to tax under section 293(a) were properly imposed. The amounts of the additions to tax for 1947 and 1949 will be recomputed under Rule 50. Decisions will be entered under Rule 50. Footnotes
*. This figure contains a mathematical error in the amount of $20. It should be $12,420.35.↩
*. The amount of $9,000 advanced to petitioner in 1948 against future sales made in 1949 is reflected in sales for 1949 and not for 1948.↩
*. The figure "$4,225.91" was deleted and the figure "$23,365.76" was added by an official order of the Tax Court, dated July 22, 1959 and signed by Judge Harron.↩
**. The figures "$4,225.91" and "$8,229.63" were deleted and the figures "$23,365.76" and "$27,369.48" were added by an official order of the Tax Court dated July 22, 1959 and signed by Judge Harron.↩
1. SEC 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩
2. Sec. 29.22(a)-7. Gross Income of Farmers. - A farmer reporting on the basis of receipts and disbursements (in which no inventory to determine profits is used) shall include in his gross income for the taxable year (1) the amount of cash or the value of merchandise or other property received during the taxable year from the sale of live stock and produce which were raised during the taxable year or prior years, (2) the profits from the sale of any live stock or other items which were purchased, and (3) gross income from all other sources. * * *
Form 1040F should be filled in and attached to his income tax return by every farmer who either keeps no records or only records of cash receipts and disbursements; its use is optional with other farmers. (See further sections 29.23(a)-11, 29.23(e)-5, and 29.23(1)-10.)↩