ROBERT D. BLANTON, JR. AND BILLIE C. BLANTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blanton v. Commissioner
Docket No. 9927-78.
United States Tax Court
T.C. Memo 1980-456; 1980 Tax Ct. Memo LEXIS 131; 41 T.C.M. (CCH) 170; T.C.M. (RIA) 80456; October 8, 1980, Filed *131 Petitioner-wife worked as a waitress in the staff dining room area of a restaurant (coffee shop) in a Las Vegas, Nevada, casino-hotel. Held: (1) Amount of tip income is determined. (2) Petitioners' constitutional and other objections are without legal merit. (3) Respondent's determination of an addition to tax under sec. 6653(a) (negligence) is sustained. Robert D. Blanton, Jr. and Billie C. Blanton, pro se. Gordon W. Cook, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal *132 individual income tax against petitioners for 1975 in the amount of $993 and an addition to tax under section 6653(a) [1] (negligence) in the amount of $50. Petitioners claim an overpayment for 1975 in the amount of $1.587. [2] The issues for decision are as follows: (1) Whether petitioners reported all tip income received by petitioner Billie C. Blanton in 1975, and if not, the correct amount of her tip income; (2) Whether petitioners' various constitutional and other objections are valid; and (3) Whether petitioners are liable for an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein *133 by this reference. When the petition in this case was filed, petitioners, Robert D. Blanton, Jr., and Billie C. Blanton (hereinafter sometimes referred to as "Blanton"), resided in Las Vegas, Nevada. During 1975, Blanton worked 1,779 hours as a waitress in the Noshorium Room at Caesars Palace, a casino-hotel in Las Vegas. The Noshorium Room was a coffee shop; all the other restaurants at Caesars Palace were "specialty rooms" (generally higher priced, with enterainment as well as food). During that year, a separate area of the Noshorium Room, called the Terrace, was used as the staff dining room. The seating capacity of the Terrace was approximately 75. On the Terrace, meals were available to Caesars Palace personnel (other than maids and porters) without charge, except that steak and lobster dishes were available at one-half the normal menu price. The menus on the Terrace did not show the prices of the dishes. Staff who ate in any of the Caesars Palace specialty rooms were charged one-half the normal menu price in that room. The public was not served on the Terrace. When a dealer at one of the gambling tables would eat on the Terrace, he or she would eat hurriedly on *134 breaks that lasted 15 to 20 minutes. In order to make efficient use of these short breaks, the dealer would telephone in a "time order", requesting that a particular dish be served at a specified time. Often, a dealer would require two or three such time orders in order to complete a single meal. As a waitress on the Terrace, Blanton frequently took time orders and was then responsible for having the ordered dishes on the tables at the designated times. Waitresses who worked on the Terrace were unionized; they received the same salary as the waitresses who worked on the regular floor of the Noshorium Room. The Terrace waitresses had been splitting tips with each other since 1969; they did not rotate stations on a daily schedule. Waitresses on the regular floor of the Noshorium Room generally did not share their tips and their stations were rotated on a daily schedule. Blanton worked on the "graveyard" shift in the Noshorium Room from 1970 to 1978. Throuhgout 1975, Blanton worked exclusively on the Terrace. Normally, three or four other waitresses would work with her on the Terrace. Blanton had the most seniority of those who worked on the Terrace and waitresses who worked *135 on the Terrace had more seniority than the waitresses on the regular floor of the Noshorium Room. Of the Terrace customers, dealers often tipped well, keno runners tipped some, and hostesses and other waitresses often did not tip at all. On the whole, the waitresses on the Terrace received less in tips than the waitresses on the regular floor of the Noshorium Room. Blanton nevertheless preferred to work on the Terrace because the work there was less stressful and did not require her to lift heavy trays. For the notice of deficiency, respondent determined Blanton's tip income based upon a formula derived from the books and records of the Noshorium Room and from certain assumptions by respondent. Respondent obtained the Noshorium Room charge sales slips of three of the charge card companies for seven specified 1975 dates. Respondent extracted from them slips with total charges of $1,800, which showed total tips of $270, resulting in a 15-percent tip rate. Respondent assumed that the average tip rate was 20 percent less than this, in order to take account of nontippers and others who might tip less than customers who charged their tips on the specified credit cards. This was *136 further reduced by one-sixth in order to take account of the waitresses' sharing of tips with bus people, bartenders, and others. The net percentage (10 percent) was then applied to the Noshorium Room's total billings of some $4.6 million, and divided by the aggregate number of waitress-hours worked during 1975. The quotient, $2.90 per waitress-hour, was then multiplied by the 1,779 hours Blanton worked in 1975 in order to determine that Blanton's 1975 tip income was $5,159 [3] (this being in addition to Blanton's $4,596.85 of other compensation from her waitress job). Blanton maintained a record of tips received during 1975, which was destroyed shortly after petitioners received the income tax refund claimed on their 1975 Federal individual income tax return. Blanton reported to her employer, and petitioners included in income, $899.20 in tips in addition to Blanton's other Noshorium Room compensation. Blanton received $3,500 in total tips in 1975, in addition *137 to her other Noshorium Room compensation. OPINION 1. Tip Income
Petitioners concede the correctness of respondent's calculation of the net hourly tip rate for the Noshorium Room as it applies to the personnel working in the Noshorium Room generally but assert that Blanton's circumstances are distinguishable in that she worked on the Terrace. Respondent asserts that the method of determining Blanton's tip income was reasonable, and that petitioners have failed to prove that the respondent erred in his determination. Respondent's approach appears to be reasonable; nevertheless, we are persuaded, on the basis of the record herein, that some adjustment to respondent's computation of tip income is necessary. Tips are, of course, includible in gross income under section 61(a), [4] e.g., Olk v. United States,536 F.2d 876, 879 (CA9 1976); Schroeder V. Commissioner,40 T.C. 30, 33 (1963). If a taxpayer fails to keep records or the records kept do not clearly reflect income, then respondent may reconstruct the taxpayer's income by use of a formula. See Mendelson v. Commissioner,305 F.2d 519 (CA7 1962), affg. a Memorandum Opinion *138 of this Court; [5]Meneguzzo v. Commissioner,43 T.C. 824 (1965); Sutherland v. Commissioner,32 T.C. 862 (1959). It is, however, open to petitioners to point out areas or specific instances in which the method used by respondent failed to reflect their true income. Meneguzzo v. Commissioner, 43 T.C. at 835. The parties have stipulated that Blanton maintained a record of tips received during 1975 which she destroyed after receiving the refund claimed on petitioners' Federal individual income tax return. We, therefore, cannot attempt to determine the record's accuracy. Blanton's uncorroborated conclusory testimony that her tip income was accurately based on this record is insufficient evidence for us to find that the record clearly reflected her income. Meneguzzo v. Commissioner,43 T.C. at 833-834; *139 Courtney v. Commissioner,28 T.C. 658, 665 (1957). Thus, respondent may reconstruct Blanton's tip income. Respondent cannot be expected to reconstruct income with mathematical precision. While we conclude respondent's formula was a reasonable one, nonetheless, we are persuaded that respondent's determination of unreported tip income must be adjusted. We agree with petitioners that Blanton's circumstances of working on the Terrace were distinguishable from the operations of the regular floor of the Noshorium Room. Blanton testified (and we have found) that although waitresses working on the Terrace made less money in tips, she chose to work there because it was not as physically demanding as working on the regular floor of the Noshorium Room. Blanton testified that the menus used on the Terrace did not list the prices of the dishes; that the casino dealers would customarily leave tips of from 75 cents to a dollar for a full meal; that the keno runners would customarily leave tips of 25 or 50 cents; and that the hostesses and other waitresses usually did not tip her at all. Blanton's testimony as to the foregoing differences between the Terrace and the regular *140 floor of the Noshorium Room is not rebutted on the record herein and is not so inherently unreasonable as to justify our disregarding it. On the one hand, we are persuaded that Blanton made less in tips than waitresses who worked on the regular floor of the Noshorium Room. Accordingly, respondent's determination of Blanton's tip income must be reduced to take into consideration the tipping practices of the various categories of Terrace customers. On the other hand, Blanton's testimony does not permit us to conclude that her tip income was as low as the 51 cents per hour reported on petitioners' tax return. On the basis of the record herein we conclude that, in 1975, Blanton netted [6] approximately $2.00 per hour of tip income, for a total tip income of $3,500 for that year. On this issue we hold that (1) petitioners have shown respondent's determination as to tip income to be in error to the extent indicated, and (2) petitioners have failed to show that they overpaid their 1975 income tax. 2. Constitutional and Other Objections
On brief, petitioners renew *141 their "motion for dismissal on the grounds of the 4th Amendment" on the basis that the administrative summons issued to Blanton's employer to produce certain of its records was improper. This motion was made and argued by petitioners before trial and denied at that time. This motion is again denied. Neither petitioners' assertions nor our examination of the record herein suggests any basis for a conclusion that either petitioner had any Fourth Amendment rights that could have been violated by that summons to Blanton's employer. See Donaldson v. United States. 400 U.S. 517, 522-523 (1971). Petitioners also make several other constitutional objections that are without legal merit. These objections include the following: (1) that they have been deprived of their right to a jury trial under the Seventh Amendment; (2) that the burden of proof has unconstitutionally been placed on them in violation of the Fifth Amendment; (3) that the income tax is unconstitutional; and (4) that certain spending policies of the United States are unconstitutional. Such contentions have been fully discussed--and rejected--in numerous prior opinions of this and other courts. E.g., *142 Swanson v. Commissioner,65 T.C. 1180 (1976) (jury trial); Rockwell v. Commissioner,512 F.2d 882, 887 (CA9 1975), affg. a Memorandum Opinion of this Court [7] (burden of proof); Brushaber v. Union Pac. R.R.,240 U.S. 1 (1916) (constitutionality of the Federal income tax laws generally); Russell v. Commissioner,60 T.C. 942 (1973) (refusal to pay income tax owed, as protest against congressional spending policies). Petitioners also assert that respondent "did not dispute" their 1977 tax return, on which petitioners reported approximately the same amount in tips as they did for 1975. This failure by respondent as to 1977 does not bar respondent from acting as to 1975. E.g., Meneguzzo v. Commissioner,43 T.C. at 836. Finally, in their reply brief, petitioners allege that respondent's formula is invalid because (1) there was no audit of 1974 and (2) respondent used for his sample the seven "highest" 1975 days, rather than seven average days. Respondent's 1974 formula (which produced a $3.02 hourly tip rate for 1974) is not relevant to the instant case *143 and has been given no weight in the Court's analysis of the facts herein. In addition, petitioners presented no evidence to support their allegation regarding the seven days sampled for 1975. Mere assertions on brief do not help petitioners carry their burden of proof on this record. See Rule 143(b), Tax Court Rules of Practice and Procedure.[8]
On these issues we hold for respondent. 3. Addition to Tax
Petitioners have the burden of proving error in respondent's determination that an addition to tax should be imposed under section 6653(a). [9]Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). *144 Petitioners have failed to prove that properly maintained records of tip income would have shown Blanton's 1975 tip income to be only the $899.20 they reported (approximately 51 cents per hour). Petitioners have failed to prove that their lack of proper records was not due to negligence.We conclude that section 6653(a) applies. On this issue we hold for respondent. To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue. ↩
2. This claimed overpayment represents the total tax originally reported on petitioners' 1975 Federal individual income tax return. Petitioners also claim an overpayment of $400,000 for 1946 through 1977. The notice of deficiency sent to the petitioners is for 1975; our jurisdiction is limited to that year. Section 6214(b).↩
3. Respondent later revised his determination of the net hourly tip rate for the Noshorium Room to be $2.98, which would result in $5,291 of tip income. However, respondent has not asserted an increased deficiency.↩
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; ↩
5. T.C. Memo. 1961-319↩.
6. This conclusion takes into consideration "stiffs", pooling of tips, and payments to bus people and others.↩
7. T.C. Memo. 1972-133↩.
8. RULE 143. EVIDENCE (b) Ex Parte Statements: Ex parte affidavits, statements in briefs, and unadmitted allegations in pleadings do not constitute evidence. As to allegations in pleadings not denied, see Rules 36(c), 37(c) and (d).↩
9. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A * * * (relating to income taxes * * *) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. [The subsequent amendment of this provision by sec. 101(f)(8) of the Crude Oil Windfall Profit Tax Act of 1980 (Pub. L. 96-223, 94 Stat. 253) does not affect the taxable year before us.]↩